NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHANEEKA L. STILL,**

        **Plaintiff,**

**v.**                                        **Case No. 6:14-cv-220-Orl-41KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff Shaneeka L. Still seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 15, and the parties' Joint Memorandum.[1]  Doc. No. 18.

## PROCEDURAL HISTORY.

In 2011, Still filed an application for benefits under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*. (sometimes referred to herein as the "Act").  She alleged that she became disabled on November 8, 2006.  R. 192.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.  Doc. No. 16.  Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order.  *Id.* at 4.

NOT FOR PUBLICATION

After her application was denied originally and on reconsideration, Still asked for a hearing before an Administrative Law Judge ("ALJ"). R. 146-47. An ALJ held a hearing on June 27, 2013. Still, accompanied by an attorney, a vocational expert ("VE") and Anthony Francis, M.D., a medical expert, testified at the hearing. R. 37-101.

After considering the hearing testimony and the evidence in the record, the ALJ found that Still had not engaged in substantial gainful activity since December 1, 2011, the application date. R. 18. The ALJ noted that Still worked as a babysitter in 2012, but found that "this work activity did not rise to the level of substantial gainful activity." *Id.*

The ALJ found that Still had the following severe impairments: a history of polysubstance abuse; history of possible bipolar disorder or depressive disorder, NOS; history of anti-social personality disorder; history of diabetes with non-compliance; history of degenerative cervical disc disease at C5-6; history of left knee pain due to degenerative joint disease and osteoarthritis; and, history of mild-moderate bilateral carpal tunnel syndrome without on-going treatment. *Id.* These impairments, individually and in combination, did not meet or equal a listed impairment. R. 17-18.

The ALJ found that Still had the residual functional capacity ("RFC") to do the following:

> [P]erform light work . . . except with no more than occasional pushing/pulling of arm/hand controls; occasional climbing of ramps and stairs, balancing, bending, stooping and crouching; no climbing of ladders, ropes and scaffolds, no kneeling or crawling; she can engage in frequent to occasional handling, but not repetitive handling; she should avoid more than frequent use of fingering and fine dexterity; she must avoid temperature extremes, concentrated vibrations, work at unprotected heights, work around dangerous moving machinery; she is limited to the performance of simple route and repetitive tasks done in response to oral directives; she should avoid interaction with the general public; she can have occasional or less interaction with supervisors and co-workers; she should have no

NOT FOR PUBLICATION

> job requiring her to meet a strict production goal or quota; she would perform better working with things as opposed to other people; she would work better in a solitary type position where interaction is only a transitory thing and no more than occasional in nature and work in an environment in which she would do the same thing every day (there is little or no change in work activities from one day to the next).

R. 20. In reaching this conclusion, the ALJ gave greater weight to the opinion of Dr. Francis, the medical expert, as it related to Still's musculoskeletal based impairments. R. 26.

The ALJ determined that with that RFC, Still could return to her past relevant work as a babysitter as she performed it. R. 29. In this section of his decision, the ALJ did not discuss his previous finding that this work was not performed at substantial gainful activity ("SGA") levels.

Alternatively, after considering the testimony of the VE, the ALJ concluded that Still could perform unskilled light or sedentary work, specifically office helper, cafeteria attendant, document preparer and lens inserter, each of which was available in the national economy. R. 30.

Therefore, the ALJ concluded that Still was not disabled. *Id.*

Still sought review of the ALJ's decision by the Appeals Council. R. 12. On January 9, 2014, the Appeals Council found no reason to review the ALJ's decision. R. 3-5.

Still now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Still having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395

NOT FOR PUBLICATION

F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the limited issues raised to protect Still's privacy to the extent possible.

Still was born in 1974. R. 48. She attended school through the eleventh grade. *Id.*

At the ALJ's hearing, Still testified that she wore wrist splints on both arms that had been prescribed by John Hawkins, M.D. She could not pick up objects, and she dropped objects a lot. She had not had surgery or other tests because she could not afford them. She could only obtain treatment under Medicaid on referral. R. 69. She could not complete physical therapy because Medicaid would not pay for it. R. 70.

The medical records reflect that Still complained of numbness and tingling in her left hand in January 2011. John R. Parnell, M.D., diagnosed peripheral neuropathy, which he treated with medication. R. 440.

Darwin Caraballo, M.D., examined Still in February 2012. He observed that Still had full range of motion in her wrists, and 5/5 musculoskeletal strength in her upper extremities. Her grip strength was only 4/5 on the left, she had mild swelling of her entire left hand and she was unable to make a fist on the left. Dr. Caraballo observed a positive Tinel's sign and a positive

4

Phalen test in Still's left hand.[2] R. 459-60. His assessment included possible carpal tunnel syndrome in the left hand. R. 460.

In March 2012, Still reported that wrist splints had been helpful in relieving problems in her wrists. As of March 7, 2012, she was no longer wearing the orthotics. R. 484. However, a physical therapy note of that date documents limited left wrist motion and that "left hand intrinsics are profoundly weaker than right." R. 486.

In June 2012, Still reported numbness in her left arm. Dr. Hawkins observed a positive Tinel's sign on the left. His impressions included carpal tunnel syndrome on the left. R. 721.

Dr. Hawkins referred Still for further diagnostic testing. Michael T. Pulley, M.D., a neurologist, performed an electrophysiologic study and EMG in July 2012. The electrophysiologic study was abnormal with evidence of bilateral median nerve entrapments at the wrists. Dr. Pulley graded the severity as moderate on the left and mild to moderate on the right. R. 601.

In October 2012, Still returned to Dr. Parnell complaining of hand pain, among other problems. Dr. Parnell's treatment notes reflect that Still was wearing a brace on both wrists. R. 590. Dr. Parnell prescribed Lortab for pain. *Id.*

At the ALJ's hearing, Dr. Francis summarized Still's impairments based on review of her records. He noted the following diagnoses: polysubstance abuse; post-traumatic stress disorder ("PTSD"); diabetes mellitus type 2 with peripheral neuropathy; bipolar disorder; an EMG nerve conduction test showing moderate carpal tunnel syndrome on the left and mild to moderate carpal

---

[2] "The Phalen's maneuver and the Tinel's test are both commonly used to detect carpal tunnel syndrome." *Jenkins-Dewindt v. Astrue,* No. 5:07-cv-314-Oc-10GRJ, 2008 WL 3889736, at * 7 n. 61 (M.D. Fla. Aug. 20, 2008).

5

NOT FOR PUBLICATION

tunnel syndrome on the right; a chronic ACL tear in the left knee with degenerative joint disease, osteoarthritis and knee pain; degenerative joint disease of the cervical spine; and, major depressive disorder. R. 42-43.

Dr. Francis opined that reasonable functional limitations for Still would be as follows:

> Either light or sedentary RFC would be appropriate for her. In the . . . light, she would be at 20 and 10 lifting, stand and walk six out of eight, no ropes, ladders, scaffolds, unprotected heights. She'd probably avoid controlled environments, such as working in a cold locker, an industrial cold locker. Probably should avoid industrial vibration, stooping, bending, crawling, squatting, kneeling . . . each of those could either be occasional or frequent in this case. . . . [A]s far as hands are concerned, if she does have bilateral carpal tunnel, she probably ought to be placed in occasional, as far as hand and wrist motions are concerned. She should avoid any kind of employment that would involve repetitive hand or wrist motions, such as working on an assembly line, data entry, or typing over extended periods of time. If we opted for a sedentary, that would be ten and ten, stand and walk two out of eight, same restrictions on unprotected heights, ladders, ropes, scaffolds, cold environment, and vibration, and then postural – stooping, bending, kneeling, crawling, squatting, would all be a third of the day or occasional. Same restrictions on use of hands.

R. 46.

The ALJ asked the VE to assume a hypothetical person of Still's education and work experience who could do the following:

> [D]uring the course of an eight-hour workday, this claimant can sit, stand, and walk, with reasonable and customary breaks. There are at least six hours each during the course of the workday that she can lift and carry, occasionally 20 pounds, meaning up to a third of the day, and more frequently 10 pounds or less. With regard to her ability to do push/pull activities with the operation of arm, hand, or foot pedal controls, she has no problems with the use of her feet to operate foot pedal controls, so that would be unlimited. Her ability to do push/pull operations with her upper extremities with the operation of arm and hand controls is limited to an occasional basis or less. With regard to her ability to perform postural activities, she

NOT FOR PUBLICATION

> may climb ramps and stairs occasionally, but no climbing of ropes, ladders, and scaffolding. With regard to her ability to perform all other postural activities, such as balancing, bending, stooping, and crouching, I would say that those could be done on an occasional basis, probably avoid kneeling and crawling. With regard to her ability to undertake manipulative activities, in terms of reaching in all directions, there's no limitation. Handling would be able to be done between an occasional and frequent basis; however, on the handling, should not be repetitive. Fingering, that is fine finger dexterity, she should avoid more than frequent use of fingering in terms of use of her upper extremities, particularly her hands, feeling is not compromised. With regarding to her ability to undertake activities that require her to see, speak, and hear, there are no limitations of function. She should avoid work in temperature extremes, and concentrated vibration, unprotected heights, and work around dangerous moving machinery. All should be avoided. With regard to mental based limitations, she's confined to a performance of simple, rote and repetitive tasks, non-response to oral directives. In terms of interaction with others, usually will be able to interact. I would say that her interaction should be somewhat limited, probably avoid interaction with the general public, interaction with coworkers and supervisors is occasional or less. She shouldn't have any job that requires that she meet a strict production goal or quotas, such as an assembly-type job. She would perform better in working with things, as opposed to other people, and work better in a solitary type position, where her interaction is only a transitory to no more than occasional in nature, in a work environment which you do the same thing every day. There's little or no change in the work activities from one day to the next, so that whatever you did on Monday, you will do the same exact thing Tuesday, Wednesday, Thursday, and Friday.

R. 93-94.

The VE testified that this person could perform Still's past work as a babysitter in the manner in which it was performed. R. 94-95. The VE opined that this person could perform the following unskilled jobs: office helper, requiring light exertion; cafeteria attendant, requiring light exertion; document preparer, requiring sedentary exertion; and, lens inserter, requiring sedentary assertion. The VE testified that each of these jobs was available in the national

NOT FOR PUBLICATION

economy.  R. 95.  In response to questions from Still's attorney, the VE testified that the jobs of office helper, cafeteria attendant, document preparer and lens inserter would require more than occasional use of the hands and wrists.  R. 98-100.

## ANALYSIS.

Still raises only two assignments of error.  First, she contends that the ALJ erred at Step Four of the sequential evaluation because her work as a babysitter was not performed at SGA levels and is, therefore, not past relevant work.  Second, she submits that the ALJ erred by failing to included occasional limitations on work with her hands and wrists as identified by Dr. Francis in the RFC assessment and hypothetical question to the VE.  I will address these assignments of error in turn.

*Past Relevant Work at Step Four of the Sequential Evaluation.*

At Step Four of the sequential evaluation, a claimant must prove that she is not able to perform her past relevant work.  *Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005)[3]; *see also* 20 C.F.R. § 416.960(b).  The regulations define "past relevant work" as work that the claimant has done within the previous fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 416.960(b)(1).  Therefore, only jobs that the Still performed at SGA levels qualify as "past relevant work" for purposes of the Step Four analysis.  *See Holmes v. Colvin*, No. 4:13cv69-RH/CAS, 2014 WL 116598, at * 13 (N.D. Fla. Jan. 10, 2014).

---

[3] Unpublished decision of the United States Court of Appeals for the Eleventh Circuit are cited herein as persuasive authority.

NOT FOR PUBLICATION

In the present case, the ALJ found that Still had not performed substantial gainful activity after December 1, 2011. The ALJ specifically concluded in his decision that Still's previous work as a babysitter in 2012 "did not rise to the level of substantial gainful activity." R. 18. Because the ALJ concluded that Still's work as a babysitter was not substantial gainful activity, that job did not qualify as past relevant work for purposes of Step Four of the sequential evaluation. Therefore, the ALJ erred at Step Four of the sequential evaluation by finding that Still could return to a job that was not past relevant work as defined by the SSA regulations. *Holmes*, 2014 WL 116598, at * 13-14.

For these reasons, I recommend that the Court find that the first assignment of error is well taken.

*Step Five of the Sequential Evaluation.*

Still contends that the ALJ erred at Step Five of the sequential evaluation because the ALJ did not include in the RFC and hypothetical question to the VE a limitation to only occasional use of her hands and arms. She submits that this limitation was supported by Dr. Francis's testimony and by other evidence in the record.

Dr. Francis opined that if Still had bilateral carpal tunnel syndrome, she should be limited to occasional hand and wrist motions and avoid any kind of employment that would involve repetitive hand or wrist motions. Even though the ALJ gave greater weight to Dr. Francis's functional capacity assessment, recognizing that he is board certified in neurology and orthopedics, he did not limit Still to only occasional use of the hands and wrists. Rather, the ALJ found that Still could perform frequent to occasional handling and frequent use of fingering and fine dexterity. R. 20. The ALJ supported this assessment as follows:

> Medical records document some complaints regarding a bilateral carpal tunnel syndrome and nerve conduction study showed evidence of such a bilateral carpal tunnel syndrome (Exhibit B-13F); however, the claimant has not received any ongoing treatment and her ability to grasp, handle and hold objects should not be materially impacted.

R. 28.

Counsel for the Commissioner argues that Dr. Francis's opinion was ambiguous, because he indicated that "if" Still had bilateral carpal tunnel syndrome, she "probably" ought to be limited to occasional hand and wrist motions. Doc. No. 18 at 19. There is, however, no ambiguity in the medical records regarding the diagnosis of bilateral carpal tunnel syndrome. Dr. Pulley opined, after diagnostic testing, that Still had bilateral median nerve entrapments at the wrists. Dr. Pulley graded the severity as moderate on the left and mild to moderate on the right. R. 601. The ALJ recognized this diagnosis later in his decision, when he wrote that medical records "document some complaints regarding a bilateral carpal tunnel syndrome and [a] nerve conduction study showed evidence of such bilateral carpal tunnel syndrome . . . ." R. 28.

The ALJ's decision also undercuts the Commissioner's argument that the ALJ found Dr. Francis's use of "probably" to be ambiguous. Even though Dr. Francis testified that Still "probably" should not work in cold environments, the ALJ included in the RFC a requirement that Still avoid temperature extremes. The ALJ also credited Dr. Francis's opinion that Still should "probably" be limited in postural activities by including in the RFC a limitation to occasional climbing of ramps and stairs, balancing, bending, stooping and crouching. Thus, the ALJ's decision does not support counsel for the Commissioner's argument that the ALJ found Dr. Francis's opinion regarding limitation on use of Still's hands and wrists to be ambiguous.

NOT FOR PUBLICATION

Counsel for the Commissioner also argues that the ALJ was not required to give any weight to Dr. Francis's opinion. While this argument is correct as far as it goes, the ALJ was required to state the weight given to Dr. Francis's opinion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). SSA regulations also indicate that more weight is given to the opinion of a specialist about a medical issue related to his area of specialty. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). The ALJ followed this law and stated that he gave "greater" weight to Dr. Francis's opinion as a specialist in neurology and orthopedics. Having given greater weight to Dr. Francis's opinion, the ALJ was required to articulate why he did not accept portions of that opinion.

Furthermore, the ALJ's reasons for discounting Dr. Francis's opinion regarding Still's limitations in use of her hands and wrists are not supported by the record. The ALJ relied on lack of ongoing treatment for carpal tunnel syndrome, but the medical records show that Still continued to complain of hand pain through October 2012, and that Dr. Parnell prescribed pain medication at that time. Similarly, the ALJ's conclusion that carpal tunnel syndrome should not materially impact Still's ability to grasp, handle and hold objects is not supported by substantial evidence in the record. In February 2012, Dr. Caraballo observed that Still's grip strength was 4/5 on the left, she had mild swelling of her entire left hand and she was unable to make a fist. Physical therapy notes from March 2012 reflect that Still's left hand was profoundly weaker than right.

Finally, the ALJ's error in his treatment of Dr. Francis's opinion regarding limitations from carpal tunnel syndrome is not harmless. The VE testified that the jobs identified at Step

11

NOT FOR PUBLICATION

Five of the sequential evaluation could not be performed if the hypothetical person was limited to occasional hand and wrist movements.

For these reasons, I recommend that the Court find that the second assignment of error is also well taken.

If the Court accepts these recommendations and finds that the ALJ erred at both Step Four and Step Five of the sequential evaluation, then remand for further proceedings is warranted.

### RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the case be **REMANDED** for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** this 17th day of December 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy